# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>EARL FOY, JR.,<br><br>    Defendant. | No. CR 07-3023-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING SENTENCING** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A. The Methodology For Determination Of A Sentence* . . . . . . . . . . . . . . . 4
    *B. Determination Of The Guideline Sentence* . . . . . . . . . . . . . . . . . . . . 7
    *C. Determination Of Whether To Depart Or Vary* . . . . . . . . . . . . . . . . . . 8
    *D. Consideration Of The § 3553(a) Factors* . . . . . . . . . . . . . . . . . . . . . 9
        *1. The nature and circumstances of the offense* . . . . . . . . . . . 11
        *2. The history and characteristics of the defendant* . . . . . . . . . 11
        *3. The need for the sentence imposed* . . . . . . . . . . . . . . . . . 15
        *4. Remaining § 3553(a) factors* . . . . . . . . . . . . . . . . . . . . 16

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Defendant Earl Foy, Jr., came before me for sentencing on August 21, 2009, on three counts of mailing threatening communications in violation of 18 U.S.C. § 876(c), and two counts of mailing threatening communications to extort money in violation of 18 U.S.C. § 876(b). The § 876(c) offenses each carry a statutory maximum sentence of 5 years (60 months), while the § 876(b) offenses each carry a statutory maximum sentence of 20 years (240 months). Foy's advisory guidelines sentencing range, as a career offender, in criminal history category VI, was 210 to 262 months of imprisonment. Nevertheless, at the sentencing hearing, I determined that the sentence that was appropriate in light of all of the § 3553(a) factors and, therefore, sufficient, but not greater than necessary, to accomplish the goals of sentencing, was 480 months of imprisonment, achieved by running the two longest statutory maximum sentences consecutively, with other sentences to run concurrently. I now enter this written decision to memorialize my rationale for this significant upward variance from defendant Foy's maximum advisory guidelines sentence.

## I. INTRODUCTION

Defendant Foy was the sole defendant charged in a five-count Indictment (docket no. 1) handed down May 22, 2007. **Counts 1**, **2**, and **4** each charged that, on separate occasions in about late November 2005 to early December 2005, Foy knowingly caused to be delivered by the United States Postal Service, according to the directions thereon, a written communication addressed to a person known to the Grand Jury and identified here as "S.K.," in Fort Dodge, Iowa, and containing threats to kill and injure "S.K." and others, all in violation of 18 U.S.C. § 876(c). **Count 1** charged such a mailing dated "11-

22-05" at the top.  **Count 2** charged such a mailing dated "11-24-05" at the top.  **Count 4** charged such a mailing, undated, but post-marked on December 16, 2005, in the Quad-Cities.

**Counts 3** and **5** of the Indictment each charged that, on separate occasions in about late November 2005 to early December 2005, with intent to extort money or other things of value, Foy knowingly caused to be delivered by the United States Postal Service, according to the directions thereon, a written communication addressed to "S.K." in Fort Dodge, Iowa, and containing a threat by Foy to kill and injure "S.K." and others, unless he was provided with money and other things of value, all in violation of 18 U.S.C. § 876(b).  **Count 3** charged such a mailing dated "11-24-05" at the top and demanding both money and other things of value.  **Count 5** charged such a mailing, undated, but post-marked on December 16, 2005, in the Quad-Cities, and demanding only money.

The alleged recipient of the mailings in question was the defendant's girlfriend and the mother of his child.  Foy was incarcerated on state charges at the time of the mailings in question.

A jury trial on these charges, presided over by visiting United States District Court Judge James E. Gritzner, of the Southern District of Iowa, commenced on April 20, 2009.  However, on the second day of trial, shortly before the case would have been submitted to the jury, Foy entered a plea of guilty to all five counts of the Indictment.  Although Foy subsequently attempted to withdraw his guilty plea, and has asserted a variety of more or less implausible grounds for doing so at various times during these proceedings, his motion to withdraw his guilty plea was denied by Order (docket no. 83) dated July 24, 2009.

Foy then came on for sentencing on August 21, 2009.  At the sentencing hearing, I found that the probation officer correctly scored Foy's guideline calculations.  Specifically, I found that Foy's total offense level is 32, pursuant to the career offender

guideline, U.S.S.G. § 4GB1.1, and that his criminal history category is VI (with 21 criminal history points). I also overruled Foy's objection to the probation officer scoring no acceptance of responsibility in this case for the reasons stated in the Presentence Investigation Report (PSIR) at paragraph 19. Thus, Foy's advisory guideline sentencing range was 210 to 262 months of imprisonment. I also overruled Foy's motion for a downward variance. After weighing the 18 U.S.C. § 3553(a) factors, I found that a substantial upward variance from defendant Foy's maximum advisory guidelines sentence was appropriate, and I therefore imposed total punishment of 480 months of imprisonment, achieved by running the statutory maximum sentences on the two § 876(b) offenses consecutively, with other sentences to run concurrently. I found that this sentence was "sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. § 3553(a). I also determined that the sentence on the federal charges should run consecutively to Foy's incomplete sentence on state charges, pursuant to U.S.S.G. § 5G1.3(a).

## II. LEGAL ANALYSIS

### A. *The Methodology For Determination Of A Sentence*

The Eighth Circuit Court of Appeals recently reiterated the three-step methodology for determination of a defendant's sentence, as follows:

> The first step in the sentencing process is to determine the proper guidelines range for the defendant's sentence. *Gall v. United States,* ---U.S. ----, 128 S. Ct. 586, 596, 169 L. Ed. 2d 445 (2007); *[United States v.] Thundershield,* 474 F.3d [503,] 506-07 [(8th Cir. 2007)]. A court should then consider whether a departure or a variance is appropriate and apply the factors in 18 U.S.C. § 3553(a). *Gall,* 128 S. Ct. at 596-97; *Thundershield,* 474 F.3d at 506-07.

*United States v. Roberson*, 517 F.3d 990, 993 (8th Cir. 2008); *United States v. Rivera*, 439 F.3d 446, 447 (8th Cir. 2006) ("In *United States v. Haack,* 403 F.3d 997, 1002-03 (8th Cir. 2005), we outlined the procedure a district court is to follow in imposing a post-*Booker* sentence.  First, the district court should determine the Guidelines sentencing range.  Second, the district court should determine whether any traditional departures are appropriate.  Third, the district court should apply all other section 3553(a) factors in determining whether to impose a Guidelines or non-Guidelines sentence.").

Although "a court of appeals may apply a presumption of reasonableness when conducting substantive review of a sentence within the advisory range, 'the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.'"  *United States v. Henson*, 550 F.3d 739, 740 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, ___, 127 S. Ct. 2456, 2465 (2007)).  The Supreme Court has recently reiterated this point, noting that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," and that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (*per curiam*) (emphasis in the original).

As the Eighth Circuit Court of Appeals has also explained,

> Under *Gall,* we may no longer require extraordinary circumstances to justify a sentence outside the Guidelines range.  *Gall,* 128 S. Ct. at 595.  However, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."  *Id.* at 594.  If, after an "individualized assessment based on the facts presented," the district court "decides that an outside-

5

> Guidelines sentence is warranted, [the district court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 597. It is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.* "[A]n abuse of discretion may occur when (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Haack,* 403 F.3d 997, 1004 (8th Cir. 2005) (internal quotation marks and citation omitted). *See also Gall,* 128 S. Ct. at 597.

*United States v. Kane*, 552 F.3d 748, 752 (8th Cir. 2009).

Finally, the court may consider consecutive sentences to achieve what the court deems to be the appropriate total punishment. For example, the Eighth Circuit Court of Appeals has recognized, in a case involving conviction on multiple child pornography counts, that a sentencing court could effectuate a life sentence under the advisory guidelines, in excess of the statutory maximum sentence of 20 years for any one count. *See United States v. Betcher*, 534 F.3d 820, 827 (8th Cir. 2008). The appellate court found that, after the sentencing court had given due consideration to the sentencing factors set out in 18 U.S.C. § 3553(a) and had recognized that the guidelines were advisory, the sentencing court had permissibly imposed consecutive statutory maximum sentences on all counts to ensure that the defendant served a term of lifetime imprisonment, as the Sentencing Guidelines advised. *Id.*; *see also United States v. Saddler*, 538 F.3d 879, 892 (8th Cir. 2008) ("Because each offense would have a statutory maximum of twenty years' imprisonment and because a district court may 'run sentences from multiple counts consecutively, rather than concurrently, if the Guideline sentence exceeds the statutory

maximum sentence for each count,' the statutory maximum for both offenses if run consecutively was forty years' imprisonment.") (quoting *United States v. Zimmer*, 299 F.3d 710, 725 (8th Cir. 2002), with quotations omitted, and also citing U.S.S.G. § 5G1.2(d)); U.S.S.G. § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."). Similarly, in *United States v. Jordan*, 435 F.3d 693 (7th Cir. 2006), the Seventh Circuit Court of Appeals affirmed a district court's imposition of consecutive sentences at the statutory maximum for each offense, even though the resulting sentence exceeded the advisory guidelines maximum sentence by 103 months. The court in *Jordan* stated that, "[b]y any measure, the sentence represents a significant upward variance from the advisory guidelines range," but nevertheless concluded that such a variance was justified by the sentencing court's evaluation of the § 3553(a) factors. *Jordan*, 435 F.3d at 697. Thus, the sentencing court may use consecutive sentences on multiple counts to impose the sentence that the court considers to be appropriate in light of the § 3553(a) factors, notwithstanding either advisory guidelines or statutory maximum sentences.

### B. Determination Of The Guideline Sentence

The first step in the sentencing process is to determine the proper guideline range for the defendant's sentence. *Roberson*, 517 F.3d at 993; *Rivera*, 439 F.3d at 447. I set forth, above, my guidelines calculations in this case, which resulted in an advisory sentencing guideline range of 210 to 262 months of imprisonment.

### *C. Determination Of Whether To Depart Or Vary*

In the second step of the sentencing methodology, I must consider whether a departure or a variance is appropriate. *Roberson*, 517 F.3d at 993; *Rivera*, 439 F.3d at 447. As I noted above, I denied Foy's motion for a downward variance and, instead, imposed an upward variance to 480 months.

At the commencement of the sentencing hearing, I gave notice that I was considering an upward variance, and in the course of the hearing, I gave a detailed explanation of the reasons that I was considering such a variance. Although Foy objected to the lack of notice of any intent to impose an upward variance prior to the sentencing hearing, I note that, under prevailing law in this circuit, I was not required to give Foy notice pursuant to Rule 32(h) of the Federal Rules of Criminal Procedure of my intent to consider an upward variance. *See United States v. Sitting Bear*, 436 F.3d 929, 932 (8th Cir. 2006) (finding no merit to a defendant's claim that Rule 32(h) requires notice of the court's intent to vary in light of all of the § 3553(a) factors, citing *United States v. Long Soldier*, 431 F.3d 1120, 1122 (8th Cir. 2005) ("[N]otice pursuant to Rule 32(h) is not required when the adjustment to the sentence is effected by a variance, rather than by a departure."), and *United States v. Egenberger*, 424 F.3d 803, 805 (8th Cir. 2005) (same), *cert. denied*, 546 U.S. 1125 (2006)). Moreover, Foy could not articulate any prejudice that he suffered from the lack of such notice and did not request a continuance in light of my statement, at the sentencing hearing, of my intent to consider imposing an upward variance. Finally, Foy could not credibly claim surprise at the imposition of an upward variance, in light of notice in the PSIR, ¶¶ 104 and 106, of the possibility of consecutive sentences, notice in the PSIR, ¶ 123, of the possibility of an upward departure, and Foy's history of violence.

I also rejected Foy's argument that the prosecution's failure to move for an upward departure or upward variance was a concession that the prosecution did not believe that this case warranted an upward departure. The prosecution did argue that consecutive sentences would be required, at least to reach the advisory guidelines maximum, and also explained the reasons for the prosecutor's decision not to seek an upward variance, which, *inter alia*, included recognition that an upward variance motion requires the approval of the Department of Justice, not merely the local United States Attorney's Office. Moreover, my determination that an upward variance is appropriate is not contingent on a motion by the prosecution.

As explained in more detail in my analysis of the third step of the sentencing methodology, below, based on an individualized assessment of the facts presented, I find that a significant upward variance from defendant Foy's maximum advisory guidelines sentence is warranted here by significant and compelling circumstances. *See Kane*, 552 F.3d at 752 (standards for determining whether and to what extent to vary).

### *D. Consideration Of The § 3553(a) Factors*

The final step in the determination of a defendant's sentence is to apply the factors in 18 U.S.C. § 3553(a). *Roberson*, 517 F.3d at 993; *Rivera*, 439 F.3d at 447. Where the court has determined that an upward variance is appropriate, how much to vary upward also requires consideration of the § 3553(a) factors. *See United States v. Papakee*, ___ F.3d ___, ___, 2009 WL 2066797, *6 (8th Cir. July 17, 2009) (the question is whether the § 3553(a) factors, as a whole, justify the extent of a variance).

The § 3553(a) factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed," § 3553(a)(2), including the need for the sentence "to reflect the

9

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training" or other care or treatment, § 3553(a)(2)(D); "the kinds of sentences available," § 3553(a)(3); "the kinds of sentence and the sentencing range established" for similar offenses, § 3553(a)(4); "any pertinent policy statement," § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6); and "the need to provide restitution to any victims of the offense," § 3553(a)(7). In considering the § 3553(a) factors, "[a] district court is not required to recite each of the sentencing factors under 18 U.S.C. § 3553(a), as long as the record makes clear that they were considered." *United States v. Powills*, 537 F.3d 947, 950 (8th Cir. 2008) (citing *United States v. Hernandez,* 518 F.3d 613, 616 (8th Cir. 2008), and *Rita v. United States,* ___ U.S. ___, 127 S. Ct. 2456, 2468-69 (2007)).

After balancing the § 3553(a) factors, I find that an advisory guidelines sentence of 210 to 262 months for this defendant is inadequate to accomplish the goals of sentencing, and that a longer sentence, consecutive terms at the statutory maximum on each of Foy's § 876(b) offenses in **Counts 3** and **5**, 20 years each for a total of 40 years (480 months), is a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. § 3553(a). I am not required to recite my consideration of each of the § 3553(a) factors, *see Powills*, 537 F.3d at 950, and in the circumstances of this case, I find that the upward variance is more than adequately justified by recitation of my consideration of the § 3553(a)(1) and (a)(2) factors.

### *1. The nature and circumstances of the offense*

The first § 3553(a) factor requires a sentencing court to consider "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). I described briefly, above, the nature and circumstances of Foy's offenses. I would add, here, that Foy threatened to kill multiple people in the threatening letters, including "S.K.," who had been the victim of some of his prior assaultive conduct, as explained below in my recitation of his criminal history. Although I have been critical of the guidelines in many respects—specifically, in that they often give excessive weight to factors like drug quantity—in this case, I find that the guidelines give substantially too little weight to the nature of the crime. The offenses here are much more serious than the base offense level for those offenses, or even the base offense level under the career offender guideline, would suggest. I also note that, even though Foy was incarcerated at the time that he mailed the threatening letters, his ultimate release was not so distant that his threats were "empty." I also reject Foy's argument that he "didn't kill anybody," either in the course of the charged offenses or in the course of any of his prior criminal offenses, as an unreasonable attempt to minimize the seriousness of what he did do. Thus, while the "nature and circumstances of the offense," standing alone, might not justify the total punishment that I have imposed in this case, they certainly demonstrate the need for substantial punishment. Moreover, these factors fully justify the statutory maximum sentence of twenty years (240 months) on each of the § 876(b) offenses.

### *2. The history and characteristics of the defendant*

The first § 3553(a) factor also requires the sentencing court to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). It is this factor that I find provides the most support for a sentence well in excess of the advisory guideline maximum and, indeed, provides support for total punishment of 480 months of imprisonment.

11

Specifically, Foy was scored as a career offender pursuant to U.S.S.G. § 4GB1.1, but he only required 6 criminal history points to qualify for that enhancement, and he had 21, even though he is only 27 years old. He also only required 13 criminal history points to qualify for criminal history category VI, yet he had 8 more points than necessary. By this objective measurement, Foy's criminal history far exceeds what is necessary to qualify for criminal history category VI and, consequently, the Sentencing Guidelines do not adequately account for his criminal history.

Perhaps still more telling than mere criminal history points is the nature of the criminal conduct in that history. Several paragraphs of the PSIR reflect crimes of violence as a juvenile: Paragraphs 56 (simple assault in 1994), 57 (simple assault in 1996), 58 (simple assault in 1998), and 60 (indicating that the 1994 assault adjudication and other juvenile offenses were not scored criminal history points owing to the age of the adjudications, pursuant to U.S.S.G. §§ 4A1.2(d)(2)(B) and 4A1.2(e)(4)). Several more paragraphs of the PSIR reflect crimes of violence as an adult: Paragraphs 62 ("disturbance of own property" in 1999, when Foy was 18, involving violent, fighting behavior), 63 (serious assault in 1999, when Foy was 18, a predicate offense for the application of the career offender guideline), 65 (assault in 2000, when Foy was 18, arising from an incident in which Foy was in the street, swearing loudly, and threatening to fight people, and when police arrived, threatened to "kick [a uniformed police officer's] ass," and resisted arrest), 66 (simple assault in 2001, when Foy was 19, involving grabbing a man around the neck and hitting him across the face four or five times), 69 (simple assault in 2001, when Foy was 20, involving fighting with a woman and hitting that woman's mother in the face twice), 71 ("5th degree assault" in Minnesota in 2003, when Foy was 22, involving assaulting a woman by hitting her in the face and body-slamming her to the ground), 72 (serious assault domestic abuse in 2004, when Foy was 22, involving grabbing the woman

who later received the threatening letters by the neck and choking her, causing a mark on her neck), 73 (domestic abuse assault causing bodily injury in 2004, when Foy was 22, involving kicking in the door of a residence and punching, slapping, and choking the woman who later received the threatening letters inside her residence and dismissal of an original charge of 1st degree burglary), and 76 (the second predicate offense for application of the career offender guideline, involving guilty pleas to burglary and operating a vehicle without consent in 2004, when Foy was 22, involving a plea agreement to dismiss another burglary charge involving infliction of bodily injury on the woman who later received the threatening communications, a count of kidnaping in the 3rd degree, involving confining or removing that same woman from one place to another, kidnaping in the 3rd degree of another woman, involving confining or removing her from one place to another, and domestic abuse assault on the woman who later received the threatening letters, causing her bodily injury, as well as dismissal of other charges). As indicated, many of the crimes of violence involve assaults on women, including the recipient of the threatening letters at issue in the charged offenses.

Foy's criminal history recounted in the PSIR also reflects interference with official acts in paragraphs 65 (the incident in which he told a uniformed officer he would "kick his ass" and resisted arrest) and 75 (involving flight from officers when they arrived to investigate his violation of a no-contact order), and escape from custody in paragraph 74 (involving jumping off a porch and running from officers while handcuffed after arrest for violation of a no contact order). Both the PSIR and the Prosecution's Sentencing Exhibits 3 and 4 reflect further assaultive conduct and other prison rules violations while incarcerated. Paragraph 96 of the PSIR states,

> The defendant has had several institutional reports while incarcerated with the Iowa Department of Corrections.

13

> Examples of reported conduct include throwing urine and feces, assault, threats, fights, gang related reports, damage to property, and verbal abuse. He is described as very manipulative. One report indicated the defendant threatened to stab a female officer.

Similarly, the Prosecution's Sentencing Exhibit 3 is an officer's report of an incident in the Dakota County Jail on July 14, 2009, in which Foy allegedly admitted to an officer that he was sharpening a shank against a sprinkler, which he intended to use on the next corrections officer who "mouthed off" to him, and Foy also allegedly stated that he could have killed a female corrections officer that morning. The Prosecution's Sentencing Exhibit 4 is an officer's report of an incident in the O'Brien County Jail on August 15, 2009, in which Foy allegedly made repeated threats to a female corrections officer and made threats to damage or destroy jail property.

Finally, Foy's mental health, which I often find is a mitigating factor for a defendant, is an aggravating factor here. There is no diagnosis of a psychosis or neurosis, but only an antisocial personality. Indeed, Foy's antisocial behavior puts him in the top 5 or 10 of the 2,500 criminal defendants that I have sentenced in my fifteen years on the federal district court bench. Foy's antisocial personality makes it unlikely that he will ever conform his behavior to the requirements of the law or society or that treatment will allow him to do so—certainly, he has been unable to do so, so far.

In short, Foy is a menace to society, a description that I have used with extreme rarity, despite the thousands of criminal defendants that I have sentenced in my career for crimes from the petty to the capital. Although, as mentioned above, Foy argues that his criminal history shows that he "didn't kill anybody," in light of his history of violent behavior, it is perhaps only a matter of time before he would do so, whether he is out of prison or in prison, and I do not intend to be the sentencing judge who allows him to inflict

further assaults on members of the public because I failed to take seriously the indications from his extensive criminal history.

Foy urges me to consider as mitigating factors his lack of parental guidance and supervision as a child, reflected in his frequent shuffling back and forth between foster homes and shelters, as well as in his early introduction to drugs and alcohol, from about the age of 12. While I find these factors substantially mitigating—sufficiently so that I rejected a sentence based on consecutive statutory maximum sentences on all five offenses—I do not find them sufficiently mitigating to dispel my belief that Foy's history and characteristics, coupled with other § 3553(a) factors, warrant a sentence of 480 months of imprisonment.

### 3. *The need for the sentence imposed*

The second § 3553(a) factor that the sentencing court must consider is "the need for the sentence imposed," § 3553(a)(2), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training" or other care or treatment, § 3553(a)(2)(D). I find that this "need for the sentence imposed" factor also warrants imposition of consecutive statutory maximum sentences on the two § 876(b) offenses, with other sentences to run concurrently, resulting in total punishment of 480 months of imprisonment.

Among these factors, I note that I have already indicated that I believe that the offenses of conviction are very serious—indeed, more serious than the applicable advisory sentencing guidelines reflect. *See* 18 U.S.C. § 3553(a)(2)(A). I also find that Foy's criminal history demonstrates a serious disrespect for the law. *Id.* Thus, just punishment

15

in this case would be a very substantial period of imprisonment. *Id*. I also find that, while it is unlikely that this specific defendant can be deterred, for the reasons I noted in my discussion of his personal history and characteristics, I believe that a very substantial sentence is appropriate to provide general deterrence to similarly situated persons, that is, those who might otherwise be inclined to engage in habitually or chronically violent behavior, particularly violent behavior towards women. *See* 18 U.S.C. § 3553(a)(2)(B) (the court should consider a sentence appropriate to provide adequate deterrence). Perhaps more importantly, I find that a sentence of 480 months is necessary in this case to protect the public from further crimes by this defendant. *See* 18 U.S.C. § 3553(a)(2)(C). Again, this defendant has been completely unable to conform his behavior to the requirements of the law and society, and he has acted out in violent ways, all leading me to the conclusion that he is a menace to society. I believe that the only way to afford adequate protection to the public from this defendant is to imprison him for most of his remaining adult life.

### 4. *Remaining § 3553(a) factors*

None of the remaining § 3553(a) factors—"the kinds of sentences available," § 3553(a)(3); "the kinds of sentence and the sentencing range established" for similar offenses, § 3553(a)(4); "any pertinent policy statement," § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6); and "the need to provide restitution to any victims of the offense," § 3553(a)(7)—lead me to a contrary conclusion. In the circumstances of this case, these factors are, at best, neutral.

## III. CONCLUSION

For all of the reasons stated above, upon a consideration of the totality of the circumstances in light of the 18 U.S.C. § 3553(a) factors—and particularly considering "the nature and circumstances of the offense" and "the history and characteristics of the defendant" pursuant to § 3553(a)(1) and "the need for the sentence imposed" pursuant to § 3553(a)(2)—I varied upward from the advisory guidelines sentencing range of 210 to 262 months of imprisonment for the defendant's "threatening communications" offense in violation of 18 U.S.C. § 876(b) and (c), and imposed a sentence of 480 months of imprisonment, achieved by running the statutory maximum sentences on the two § 876(b) offenses consecutively, with other sentences to run concurrently. In my view, such a sentence is appropriate in light of all of the § 3553(a) factors and, therefore, is sufficient, but not greater than necessary, to accomplish the goals of sentencing. While I am confident that the sentence I have imposed is necessary to protect the public and to accomplish other goals of sentencing, because this sentence substantially exceeds Foy's maximum advisory guidelines sentence, I encourage Foy to appeal this sentence.

THEREFORE,

1. The defendant's August 16, 2009, Motion For Variance Pursuant To 18 U.S.C. § 3553(a) (docket no. 89) was **denied**; and

2. Defendant Foy was sentenced to consecutive sentences of 240 months of imprisonment on **Counts 3** and **5**, with concurrent sentences of 60 months of imprisonment on **Counts 1**, **2**, and **4**, resulting in total punishment of 480 months of imprisonment, an upward variance, followed by 3 years of supervised release on **Counts 1** through **5**, to run concurrently, all with such other terms and conditions as were stated at the sentencing hearing on August 21, 2009. The 480-month sentence on these charges is to run

consecutively to the defendant's incomplete prison term on state offenses pursuant to U.S.S.G. § 5G1.3(a).

This Memorandum Opinion And Order Regarding Sentencing shall be attached to and incorporated by reference, in its entirety, into the Statement of Reasons and Judgment in this case.

**IT IS SO ORDERED.**

**DATED** this 24th day of August, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA